Christopher S. Morris, Esq., SBN 163188
cmorris@morrislawfirmapc.com
Danielle R. Pena, Esq., SBN 286002
dpena@morrislawfirmapc.com
MORRIS LAW FIRM, APC
501 West Broadway, Suite 1480
San Diego, CA 92101
Telephone:  (619) 826-8060
Facsimile:   (619) 826-8065

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW SANTILLAN Individually, and MELVIN SONODA, Individually,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO SHERIFF'S DEPUTY ALEJANDRO SILVA II, Individually; COUNTY OF SAN DIEGO SHERIFF'S DEPUTY PAUL OULES, Individually; COUNTY OF SAN DIEGO SHERIFF'S DEPUTY RUBEN MEDINA, Individually; COUNTY OF SAN DIEGO SHERIFF'S DEPUTY CHRISTOPHER ALLEN Individually; AND DOES 1-10, inclusive,<br><br>Defendants. | Case No. **'19CV1552 WQHNLS**<br><br>**COMPLAINT FOR:**<br><br>1. **4th AMENDMENT – UNREASONABLE FORCE**<br>2. **4th AMENDMENT – UNREASONABLE SEARCH AND SEIZURE OF A PERSON**<br>3. **4th AMENDMENT – UNREASONABLE SEARCH AND SEIZURE OF PROPERTY**<br>4. **BANE ACT VIOLATION**<br>5. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**<br>6. **NEGLIGENCE**<br>7. **BATTERY** |

COMPLAINT                                                                                  CASE NO.

## I.

## STATEMENT OF FACTS

1. Plaintiffs, Andrew Santillan and Melvin Sonoda (collectively referred to as "the Brothers"), are brothers living together in Imperial Beach, California.

2. On July 17, 2018, Melvin, 25 years old, called 911 at 10:16 p.m. because an intoxicated-woman refused to leave his home when asked. Melvin called 911 to avoid further arguing.

3. At approximately 10:30 p.m., without a warrant or exigent circumstances, four San Diego County Sheriff's deputies busted into the Brothers' home with their guns drawn.

4. Seconds before the deputies entered the residence illegally, Melvin heard a commotion by his front door. He approached. As he did so, deputies forced open the door. Melvin threw his hands in the air. Despite his compliance, Melvin was yanked outside and thrown to the ground by Deputy Silva and Deputy Oules. His hands were secured behind his back. The two deputies forcibly controlled Melvin with their bodyweight for approximately two minutes. After a few choice words, Deputy Silva stood over Melvin, as he was lying face-down on the ground, and delivered a hammer-fist punch to Melvin's face, immediately breaking his nose and damaging his left eye.

5. Andrew, 22 years old, had come into the living room just as Melvin was being pulled outside. Andrew, shocked to see four deputies with guns drawn, approached with his hands out in front of him in a non-aggressive manner. An unknown deputy immediately and violently struck Andrew on the top of his head with a Maglite. Andrew was stunned, taking several steps backwards away from the deputies. Andrew put his hands up as commanded. Without provocation, Sergeant Medina tased Andrew in his left chest-pectoral and left pinky finger – indicating his hands were up at the time he was tased. Andrew started screaming,



COMPLAINT                                        CASE NO.

informing the deputy that he suffered from a serious heart condition called Wolff-Parkinson-White syndrome. Sergeant Medina held the taser trigger down for at least eight seconds.

6. Both Brothers were then wrongfully arrested and criminally charged for crimes they did not commit.

## II.
## JURISDICTION AND VENUE

7. This action arises under the Constitution and laws, including Article III, Section 1 of the United States Constitution and is brought pursuant to 42 U.S.C. section 1983. The Jurisdiction of this court is invoked pursuant to 28 U.S.C. section 1331. State law claims are alleged as well, over which Plaintiffs invokes the Court's supplemental jurisdiction.

8. This case is instituted in the United States District Court for the Southern District of California pursuant to 28 U.S.C. section 1391, as the judicial district in which all relevant events and omissions occurred and in which Defendants maintain offices, work, and/or reside.

9. Pursuant to the California Government Code, Plaintiffs filed their claim with the County of San Diego based on the foregoing incident. The claim was rejected on February 19, 2019. Thus, the present complaint is timely, pursuant to California Government Code section 945.6.

## III.
## THE PARTIES

10. Plaintiff Andrew Santillan was a resident of San Diego County in the State of California and a citizen of the United States at all times relevant to this complaint. He was injured in his apartment in the County of San Diego.

11. Plaintiff Melvin Sonoda was a resident of San Diego County in the State of California and a citizen of the United States at all times relevant to this complaint. He was injured in his apartment in the County of San Diego.

12. Defendants Alejandro Silva, Ruben Medina, Paul Oules, and Christopher Allen were the deputies that violated the Brothers constitutional rights. Based on information and belief, each Defendant lives in and works for the County of San Diego at all times mentioned herein, and committed the culpable acts against Plaintiffs in the same county.

13. The names of the other individual Sheriff's Deputies who are responsible for Plaintiffs' injuries are currently unknown to Plaintiffs. As such, these individuals are sued herein as DOES 1-10.

14. The true names and capacities whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1-10 are unknown to Plaintiffs, who therefore sue said defendants by said fictitious names. Plaintiffs will amend this complaint to show said defendants true names and capacities when the same have been ascertained. Plaintiffs are informed and believe and thereon allege that all defendants sued herein as DOES are in some manner responsible for the acts and injuries alleged herein.

15. At all times mentioned herein Defendants named herein as DOES 1-10 were employees and/or independent contractors of Defendant San Diego County and in doing the acts hereinafter described acted within the course and scope of their employment. The acts of all defendants and each of them were also done under the color and pretense of the statutes, ordinances, and regulations of the County of San Diego and the State of California. In committing the acts and/or omissions alleged herein, all defendants acted under color of authority and/or under color of law. Plaintiffs sue all public employees named as Defendants in their individual capacities.

/ / /
/ / /
/ / /
/ / /

IV.

**FIRST CAUSE OF ACTION**

**42 U.S.C. Section 1983 – 4th Amendment – Unreasonable Force**

**[By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]**

16. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

17. To prove an excessive force claim under the Fourteenth Amendment, a pretrial detainee must show that the officers' use of force was "objectively" unreasonable. The detainee is not required to show that the officers were "subjectively" aware that their use of force was unreasonable. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2472 (2015).

18. The Brothers were inside their house and presented no justifiable reason for the deputies to slam open the door and enter the residence. Because Defendants rushed in unexpectedly, the Brothers were taken off guard. Melvin was near the door as he was going to open it for Defendants. Within a second, Melvin put his hands in the air. Defendants Silva and Oules then grabbed Melvin's left wrist and yanked him out of the house. Melvin was laid-out on the ground, face first. Melvin's hands were controlled behind his back while the officers were on top of him, using their bodyweight to control Melvin's body. After approximately two minutes of being controlled on the ground, Melvin started yelling choice-words towards Defendants. Suddenly, Defendant Silva, who was standing over Melvin from behind, hammer-fisted Melvin in his face. Melvin's nose was broken in two places and damage was caused to his left eye. This use of force was not only unreasonable, but was sadistic and done with the sole purpose of causing significant injuries.

19. At that exact time Melvin was being pulled out of the house, Andrew came into the living room and was surprised to see four deputies with their guns drawn. Andrew stuck his arms out in front of him as if to say "Whoa, what's going

on." An unknown-deputy then struck Andrew on the top of his head with a metal flashlight. Andrew stumbled backwards and raised his hands. In less than two seconds, Sergeant Medina entered the residence and deployed his taser at Andrew, who was standing four feet away. The taser prongs hit Andrew's pinky finger and chest-pectoral, indicating Andrew's hands were up at the time. Defendant Medina held the taser trigger for at least eight seconds. This use of force was not only unreasonable, but was sadistic and done with the sole purpose of causing significant injuries.

20. Under these circumstances, Defendants acted unreasonably because each created an unsafe situation by illegally and unexpectedly entering the residence. That illegal and unreasonable decision created a sudden face-to-face contact with Melvin and Defendants Silva and Oules.

21. Doubling-down on their first unreasonable decision, instead of utilizing de-escalation tactics, Defendants immediately resorted to force. Moreover, the force used was overkill. Once Melvin was yanked to the ground and controlled, there was no need to utilize further force. As for Andrew, he was never face-to-face with the Defendants and always had his hands out in open sight. However, when he did enter the living room, he was struck and tased within two seconds. Again, Defendants resorted to force first.

22. Each Brother was unarmed and had their hands in the air (or restrained) at the time force was used.

23. Based on the facts alleged above, there was no circumstance in which it was reasonable to use force. The initial call was not violent in nature. Defendants were not influenced by the threat of danger coming from inside the apartment. The Brothers were not suspected of a crime. Nor were they armed or threatened violence. A reasonable officer in this situation would have waited to enter the residence and would have utilized de-escalation tactics prior to using

///

force. However, the force in the form of a hammer-fist, Maglite to the head, and taser were not necessary.

24. As a result of Defendants unlawfully entering the residence, Melvin was ripped out of his home without cause and placed under arrest without cause. He was then hammer-fisted in the face because Defendant Silva thought he was too mouthy. The force instantly resulted in a broken nose. The ramifications have had a lasting effect as Melvin's vision is damaged in his left eye.

25. As a result of Defendants' unlawfully entry, Andrew was hit in the head with a metal flashlight and then tased, all while his hands were up in the air.

26. Both Brothers are fearful that they are no longer safe in their home, and that law enforcement feels entitled to enter their home on any whim, without a warrant, exigent circumstances, or probable cause. This fear has haunted them since the incident. So much so that they have lost sleep and their appetite. Andrew has developed stomach pain on account of the increased stress and anxiety.

27. Because of their injuries, Plaintiffs are entitled to money damages pursuant to 42 U.S.C. section 1983 to compensate them for their injuries and for the violation of their Constitutional and civil rights.

28. In addition to compensatory, economic, consequential, and special damages, Plaintiffs are entitled to punitive damages against each Defendant under 42 U.S.C. section 1983, in that the actions of each were done intentionally and with the intent to violate Plaintiffs' right, or was done with a reckless disregard or wanton disregard for Plaintiffs constitutional rights.

///
///
///
///
///
///

COMPLAINT                                                    CASE NO.

# V.

## SECOND CAUSE OF ACTION

### 42 U.S.C. Section 1983 – 4th Amendment

### Unreasonable Search and Seizure of a Person / False Arrest

### [By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]

29. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

30. If a reasonable person in the suspect's position would have considered the police's behavior to constitute the kind of restraint that is typical of formal arrest, then an arrest has occurred. Some courts phrase the issue as depending on whether, after brief questioning, a reasonable innocent person would have felt free to leave—if not, there's been an arrest. *Johnson v. Bay Area Rapid Transit Dist.*, 724 F.3d 1159 (9th Cir. 2013).

31. Penal Code section 835 states "An arrest is made by an actual restraint of the person … The person arrested may be subjected to such restraint as is reasonable for his arrest and detention."

32. As a result of Defendants' use of force, both brothers were wrongfully detained and arrested. Knowing their use of force was not only unreasonable but sadistic, Defendants conspired to arrest the Brothers in hopes of intimidating them from initiating this lawsuit; or in the alternative, to help defend against any resulting lawsuit by relying on criminal charges as justification for illegally entering the residence and using force.

33. Melvin was wrongfully arrested for domestic violence based on a fraudulent statement from the intoxicated-woman that refused to leave his house. Defendants arrested Melvin knowing the allegations were false because the alleged-victim (the intoxicated-woman's friend) told Defendants that the argument between her and Melvin was not physical, only verbal. Defendants also noted the alleged-victim was not in physical distress and did not have any marks on her body.

Despite the lack of probable cause, Defendants arrested and charged Melvin with spousal/cohabitant abuse with minor injury.

34. Andrew was wrongfully detained and arrested for obstructing a peace officer. Defendants detained Andrew for over ten minutes while holding him at taser-point. Then Andrew was handcuffed and mirandized. He was then escorted outside and waited over an hour with the taser prongs still inside his chest-pectoral and pinky finger. Ultimately, Andrew was cited and released. Again, Defendants arrested Andrew knowing that he did not provoke their unreasonable use of force, and knowing that he did not obstruct their investigation.

35. As a result of Defendants' wrongful arrest, both Brothers sustained serious injuries in the form of criminal consequences. Both Brothers have also suffered from emotional distress. They are fearful that they are no longer safe in their home, and that law enforcement feels entitled to enter their home on any whim, without a warrant, exigent circumstances or probable cause. This fear has haunted them since the incident. This is especially so because the Brothers live in a highly-patrolled area.

36. Because of their injuries, Plaintiffs are entitled to money damages pursuant to 42 U.S.C. section 1983 to compensate them for their injuries and for the violation of their Constitutional and civil rights.

37. In addition to compensatory, economic, consequential, and special damages, Plaintiffs are entitled to punitive damages against each Defendant under 42 U.S.C. section 1983, in that the actions of each were done intentionally and with the intent to violate Plaintiffs' right, or was done with a reckless disregard or wanton disregard for Plaintiffs constitutional rights.

///
///
///
///

## VI.

## THIRD CAUSE OF ACTION

### 42 U.S.C. Section 1983 – 4th Amendment

### Unreasonable Search and Seizure of Property

### [By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]

38. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

39. Under the Fourth Amendment, Plaintiffs have the right to be free from an unreasonable seizure of their property.

40. The Brothers were inside their house and presented no justifiable reason for the deputies to bust open the door and enter the residence without a warrant. Because Defendants rushed in unexpectedly, the Brothers were taken off guard. Melvin was near the door as he was going to open it. Within a second, Melvin put his hands in the air, which was matched with unreasonable and excessive force. The same is true with Andrew. He came into the living room not expecting to see four deputies with their guns drawn. Andrew had his hands out in front of him and was struck in the head. As he was stumbling backwards (away from Defendants), Andrew was tased for at least eight seconds

41. After the Brothers were arrested, Defendants searched the entire premises without a warrant.

42. As a result of Defendants' illegal entry into the residence, the Brothers are fearful that they are no longer safe in their home, and that law enforcement feels entitled to enter their home on any whim, without a warrant, exigent circumstances or probable cause. This fear has haunted them since the incident. Because of their injuries, Plaintiffs are entitled to money damages pursuant to 42 U.S.C. section 1983 to compensate them for their injuries and for the violation of their Constitutional and civil rights.

///

COMPLAINT                                                                 CASE NO.

43. In addition to compensatory, economic, consequential, and special damages, Plaintiffs are entitled to punitive damages against each Defendant under 42 U.S.C. section 1983, in that the actions of each were done intentionally and with the intent to violate Plaintiffs' right, or was done with a reckless disregard or wanton disregard for Plaintiffs' constitutional rights.

## VII.

## FOURTH CAUSE OF ACTION

### Interference With Right By Threat, Intimidation, or Coercion – Bane Act - Civil Code Section 52.1

**[By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]**

44. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

45. It was Melvin that initially called for the Sheriff's help because a highly intoxicated woman refused to leave his home when asked. Melvin called 911 to de-escalate the situation and to avoid further confrontation. When Defendants arrived, they did not knock on the door or ring the doorbell. Rather, Defendants barged into Plaintiffs' residence and utilized force first. Defendants failed to use de-escalation tactics and failed to use reasonable force. Rather, the forced used was performed with the purely sadistic purpose of causing harm. Melvin was secured by at least two deputies when he started cursing at them. That resulted in a hammer-fist to the face. Such force was reactive and malicious. The same is true for Andrew. In less than three seconds from entering the living room with his hands out in front of him, Andrew was hit in the head and tased. Again, both Brothers were unarmed and had their hands either secured or raised in the air.

46. Defendants doubled-down on their outrageous conduct by criminally charging both Brothers without sufficient evidence. Knowing their use of force was not only unreasonable but sadistic, Defendants conspired to arrest the Brothers in hopes of intimidating them from initiating this lawsuit; or in the alternative, to help

defend against any resulting lawsuit by relying on criminal charges as justification for illegally entering the residence and using force.

47. Defendants acted violently against the Brothers to interfere with their right to free speech and expression. Defendants also intimidated the Brothers by criminally charging them in order to prevent a successful civil rights claim against Defendants based on their unreasonable force and illegal entry.

48. The conduct alleged above was intended to cause the Brothers physical pain and emotional distress. As a result of this act, Plaintiffs suffered the injuries and damages described in the above paragraphs, entitling them to damages in an amount to be proven at trial.

## VIII.

## FIFTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

**[By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]**

49. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

50. It was Melvin that initially called for the Sheriff's help because a highly intoxicated woman refused to leave his home when asked. Melvin called 911 to de-escalate the situation and to avoid further confrontation. When Defendants arrived, they did not knock on the door or ring the doorbell. Rather, Defendants barged into Plaintiffs' residence and utilized force first. Defendants failed to use de-escalation tactics and failed to use reasonable force. Rather, the forced used was performed with the purely sadistic purpose of causing harm. Melvin was secured by at least two deputies when he started cursing at them. That resulted in a hammer-fist to the face. Such force was reactive and malicious. The same is true for Andrew. In less than three seconds from entering the living room with his hands out in front of him, Andrew was hit in the head and tased. Again, both Brothers were unarmed and had their hands either secured or raised in the air.

51. Defendants doubled-down on their outrageous conduct by criminally charging both Brothers without sufficient evidence. Knowing their use of force was not only unreasonable but sadistic, Defendants conspired to arrest the Brothers in hopes of intimidating them from initiating this lawsuit; or in the alternative, to help defend against any resulting lawsuit by relying on criminal charges as justification for illegally entering the residence and using force.

52. The conduct alleged above was intended to cause the Brothers emotional distress and/or was done with reckless disregard of the probability that the Brothers would suffer emotional distress. As intended, Defendants' conduct did in fact cause severe emotional distress.

53. As a result of this act, Plaintiffs suffered the injuries and damages described in the above paragraphs, entitling them to damages in an amount to be proven at trial.

54. In committing the acts alleged above, Defendants acted oppressively, maliciously, and/or were guilty of wanton and reckless disregard for the rights and feelings of both Brothers, and by reason thereof Andrew and Melvin are entitled to exemplary and punitive damages in an amount to be proven at trial.

## IX.

## SIXTH CAUSE OF ACTION

### Negligence

**[By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]**

55. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

56. Defendants were charged with the duty to act in accordance with the laws of state and the Constitution. They were also trained not to harass citizens or use their power (and force) in ways contrary to the law.

57. Defendants were negligent because they barged into Plaintiffs' residence without a warrant or justifiable concern. They immediately resorted to

violence instead of using the de-escalation tactics taught to them in the POST Academy and follow-on training. Defendants then attempted to cover-up their excessive force by criminally charging both Brothers for crimes they did not commit.

58. Defendants' conduct was done for the sole purpose of causing severe harm, distress, injury, fear, and pain, or at the very least, was done in reckless disregard of that probability.

59. As a result of these acts, Plaintiffs suffered the injuries and damages described above, entitling them to damages in an amount to be proven at trial.

60. In committing the acts alleged above, Defendants acted maliciously and/or were guilty of a wanton and reckless disregard for the rights and feelings of Plaintiffs and by reason thereof she is entitled to exemplary and punitive damages in an amount to be proven at trial.

## X.

## SEVENTH CAUSE OF ACTION

### Battery

**[By Andrew and Melvin Against All Defendants and DOE Deputies 1-10]**

61. Plaintiffs reallege and incorporate by reference all paragraphs stated above, as though fully set forth herein.

62. As alleged in detail above, Defendants' force was not reasonable or consented to. As a result of Defendants' conduct, the Brothers suffered severe physical injuries and damages described above, as well as emotional suffering, entitling them to damages in an amount to be proven at trial.

63. In committing the acts alleged above, Defendants acted maliciously and/or were guilty of wanton and reckless disregard for the rights and feelings of the Brothers and by reason thereof are entitled to exemplary and punitive damages in an amount to be proven at trial.

///

## XI.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgement against Defendants, for each and every cause of action, as follows:

1. For compensatory, general and special damages against each defendant, jointly and severally, in an amount according to proof;

2. For punitive and exemplary damages against each individually named defendant in their individual capacity in an amount appropriate to punish defendants and deter others from engaging in similar misconduct;

3. For costs and reasonable attorney's fees pursuant to 42 U.S.C. section 1988 and as otherwise authorized by statute or law;

4. For any further relief that the Court may deem appropriate.

## XII.

## **DEMAND FOR JURY TRIAL**

Demand is hereby made by Plaintiffs Andrew and Melvin for a jury trial.

Respectfully submitted,

**MORRIS LAW FIRM, APC**

Dated: August 16, 2019        by:   *s/ Danielle R. Pena*
Danielle R. Pena, Esq.
dpena@morrislawfirmapc.com
Christopher S. Morris
cmorris@morrislawfirmapc.com
Attorneys for Plaintiffs